IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 4, 2003

## MICHAEL D. BELL v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-02-67     Roy Morgan, Judge**

———————————

### No. W2002-01457-CCA-R3-PC  - Filed April 1, 2003

———————————

In his petition for post-conviction relief and in the resulting evidentiary hearing, the petitioner, Michael D. Bell, presented to the Madison County Circuit Court entwined issues of whether trial counsel was effective and whether the petitioner's guilty plea was voluntary.  The post-conviction court denied relief, and the petitioner appeals that determination.  We affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and DAVID H. WELLES, JJ., joined.

Michael D. Rasnake, Jackson, Tennessee, for the Appellant, Michael D. Bell.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General; and Al Earls, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

Pursuant to a plea agreement, the petitioner entered guilty pleas in 2001 to two counts of attempted first-degree murder and one count of interfering with utility lines, and the trial court sentenced him to the agreed-upon, effective sentence of eighteen years in the Department of Correction.

In his timely post-conviction petition, the petitioner alleged that his guilty pleas were involuntary – the product of pressure resulting from his youthful naivete, inexperience with the criminal justice system, counsel's threats that a trial would lead to as much as 50 years' incarceration, his counsel's failure to prepare a defense for trial, and learning, when he arrived at the courthouse on the morning of the scheduled trial, that a jury had been selected in his absence. The petitioner also alleged that his pretrial statement had been coerced and that he involuntarily gave the

statement as a result of drug influence and lack of sleep. Finally, the petitioner alleged that his trial counsel was ineffective because counsel failed to fully advise and counsel the petitioner, failed to interview witnesses, and failed to move to suppress the petitioner's pretrial statement.

In the post-conviction evidentiary hearing, the petitioner testified that, rather than the pretrial statement being the result of his impairment or coercion by the officers, he simply did not remember giving the statement. He testified that his trial counsel met with him three times for periods of ten to fifteen minutes each and that the lawyer repeatedly told him that his prospects were not good and that he faced a sentence between 30 and 50 years. He claimed that his counsel failed to interview witnesses who were on the scene of the shooting, even though he told counsel that witnesses could testify that a victim pulled a gun on the petitioner before the petitioner pulled his gun. The petitioner testified that he told counsel that he wanted to tell his side of the story at trial but that counsel warned him not to testify. The petitioner testified that counsel failed to arrange "trial clothes," relegating him to wearing ill-fitting clothes furnished by the jailer. The petitioner testified that he was unfamiliar with court proceedings, having just turned eighteen at the time of the offense and having no prior felony record. He testified that, when he was taken to the courthouse on the morning of the scheduled trial, his lawyer told him that the jury had already been selected and was waiting outside the courtroom. He testified he felt pressured or threatened into pleading guilty.

On cross-examination, the petitioner testified that he lied when he told the trial court during his plea submission hearing that he understood his rights, that he was pleading freely and voluntarily, and that he was satisfied with the services of his lawyer. He testified that his agreeable answers to the trial court's questions at the plea hearing were offered to avoid a continuance and to expedite his transfer from the jail to the penitentiary.

A police investigator who was present when the petitioner's pretrial statement was taken testified at the evidentiary hearing that the petitioner did not seem intoxicated or otherwise impaired when he gave the statement.

The petitioner's mother testified at the hearing that, when she tried to relay her son's pretrial messages to his attorney, the attorney dismissed her without speaking with her, saying that the petitioner was the client, not his mother.

The petitioner's trial counsel testified at the evidentiary hearing that, beginning with his appointment in the case, the petitioner throughout maintained that he wanted counsel to arrange a suitable plea agreement. Counsel testified that he met with the petitioner on five or six occasions. Counsel was allowed to inspect and copy the state's file, and he took a copy of the file to the petitioner, who threw it away. Counsel declined to move to suppress the petitioner's pretrial statement because the statement was essentially exculpatory, and its use in evidence would have allowed the petitioner to insert his theory of defense into the evidence without the risk of testifying. Counsel informed the petitioner of this tactic, and the petitioner did not disagree with it. Counsel testified that the petitioner did not tell him about any witnesses other than the petitioner's mother.

Counsel indicated that he may have told the petitioner on the morning of the scheduled trial that the jury "pool" was in the courthouse.

The assistant district attorney general who prosecuted the petitioner's case testified that she had determined not to use the petitioner's pretrial statement because it was self-serving, and she wanted the petitioner to have to take the stand if he wished to claim self-defense. She admitted that the state could not locate a state witness named Triplett and that Mr. Triplett was not present at the courthouse on the morning of the scheduled trial. The petitioner pleaded guilty later that day in lieu of going to trial, despite that on an appearance date a few weeks before the petitioner had backed out of the plea agreement then pending.

The state introduced into evidence a transcript of the petitioner's guilty plea submission hearing. The transcript reveals that the trial court conducted a full examination of the petitioner, pursuant to Tennessee Rule of Criminal Procedure 11(c). During the course of the proceeding, the petitioner acknowledged under oath that he understood the various rights as explained to him by the judge; that he wished to waive his rights, including his right to trial by jury; that he had been promised nothing in exchange for his plea except for the provisions of the plea agreement; that he was pleading freely and voluntarily; that he had reviewed the case with his lawyer and was satisfied with the lawyer's performance; that he understood the terms of the agreement as explained by the court; and that he had no questions.

Following the evidentiary hearing, the lower court ruled that the petitioner had failed to show either that his guilty plea was involuntary or that his trial counsel rendered ineffective assistance. The court relied heavily upon the petitioner's responses and affirmations during the plea hearing and found that the guilty plea was voluntary and valid. Also, the court held that the petitioner had established neither his claims of deficient attorney performance nor that he was prejudiced by counsel's performance.

In post-conviction proceedings, the petitioner has the burden of proving by clear and convincing evidence the claims raised. Tenn. Code Ann. § 40-30-210(f) (1997). On appeal, the lower court's findings of fact are reviewed *de novo* with a presumption of correctness that may only be overcome if the evidence preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

When a petitioner challenges the effective assistance of counsel, he has the burden of establishing (1) deficient representation and (2) prejudice resulting from that deficiency. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Deficient representation occurs when counsel's services fall below the range of competence demanded of attorneys in criminal cases. *Bankston v. State*, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991). Prejudice is the reasonable likelihood that, but for deficient representation, the outcome of the proceedings would have been different. *Overton v. State*, 874 S.W.2d 6, 11 (Tenn. 1994). When it is alleged that the ineffective assistance of counsel resulted in a guilty plea, the burden is upon the defendant to establish the prejudice prong of *Strickland* by

proving that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985). On review, there is a strong presumption of satisfactory representation. *Barr v. State*, 910 S.W.2d 462, 464 (Tenn. Crim. App. 1995).

When reviewing the entry of a guilty plea, the overriding concern is whether the plea is knowingly, voluntarily and understandingly made. *Boykin v. Alabama,* 395 U.S. 238, 242-44, 89 S. Ct. 1709, 1712 (1969). "[A] plea is not 'voluntary' if it is the product of 'ignorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats. . . .' " *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting *Boykin*, 395 U.S. at 242-43, 89 S. Ct. at 1712). Moreover, a plea cannot be voluntary if the defendant is "incompetent or otherwise not in control of his mental facilities" at the time it is entered. *Id*. at 904-05 (quoting *Brown v. Perini*, 718 F.2d 784, 788 (6th Cir.1983)). A defendant's plea of guilty is not constitutionally infirm or coerced merely because the defendant opted to plead guilty as a means of avoiding a more severe sentence following a trial. *See, e.g., Brady v. United States*, 397 U.S. 742, 751, 90 S. Ct. 1463, 1471 (1970).

With these familiar legal principles in mind, we readily discern that the lower court's findings and conclusions are supported in the record. The petitioner's claims of an involuntary guilty plea ring hollow in the face of his own admission that he pleaded guilty to avoid a greater sentence and to expedite his transfer into state custody, his trial counsel's testimony that the petitioner sought a guilty plea from the beginning of the case, and the petitioner's affirmations and acknowledgments made during the submission of his guilty pleas. The post-conviction judge was the same judge who accepted the guilty pleas, and we defer to him in accrediting the petitioner's testimony at the plea submission hearing over his testimony at the post-conviction hearing.

We also agree with the trial court that the petitioner failed to establish ineffective assistance of his trial counsel by clear and convincing evidence. Not only did he not demonstrate that counsel performed in any deficient way, but he also failed to establish that, but for counsel's errors or omissions, he would have declined to plead and would have gone to trial.

Although we may sympathize with the plight of an eighteen-year-old man with no prior felony convictions, neither our sympathy nor our hopes for a brighter future for him may substitute for his failure to prove his post-conviction claims by clear and convincing evidence. According, the judgment of the lower court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE